

1  SCHNEIDER & WALLACE
2  Todd M. Schneider (SBN 158253)
   Joshua Konecky (SBN 182897)
3  W.H. "Hank" Willson, IV (SBN 233321)
   Rachel E. Brill (SBN 233294)
4  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
5  Tel: (415) 421-7100
   Fax: (415) 421-7105
6  TTY: (415) 421-1665
7
   Attorneys for Plaintiff and the putative Class
8
9

**ORIGINAL
FILED**

**MAY  3 2007**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

10              **UNITED STATES DISTRICT COURT**

11            **NORTHERN DISTRICT OF CALIFORNIA**

12

13  MADHAV KAKANI, GENNADY BRIN, and      Case No. C-06-06493 WHA
    RANJIV JAIN, on behalf of themselves and all
14  others similarly situated,              **PLAINTIFFS' NOTICE OF MOTION AND**
                                            **MOTION FOR CLASS CERTIFICATION;**
15              Plaintiffs,                 **MEMORANDUM OF POINTS AND**
                                            **AUTHORITIES**
16          vs.
                                            **[REDACTED VERSION]**
17  ORACLE CORPORATION,
                                            Date: June 7, 2007
18              Defendant.                  Time: 8:00 am
                                            Judge: The Hon. William H. Alsup
19                                          Courtroom: 9

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION

TO THE COURT AND DEFENDANT ORACLE CORPORATION AND ITS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 7, 2007 at 8:00 am in the United States District Court, Northern District of California, Plaintiffs will and hereby do move the Court pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, to certify the two classes described below, certify Plaintiffs as class representatives for both classes, and certify Plaintiffs' counsel as class counsel for both classes:

(1) All individuals who worked as sales consultants for Oracle in California for more than eight hours in one or more days or more than 40 hours in one or more weeks at any time from four years prior to the filing of this case until Oracle's uniform reclassification of this position to nonexempt and overtime eligible. (This definition applies to Plaintiffs' claims arising under the California Labor Code and the Unfair Competition Law ("UCL"), where the UCL claims are predicated on the alleged violations of the California Labor Code.)

(2) All individuals who worked as sales consultants for Oracle in the United States for more than 40 hours in one or more weeks at any time from four years prior to the filing of this case until Oracle's uniform reclassification of this position as nonexempt and overtime eligible. (This definition applies to Plaintiffs' claims arising under the Unfair Competition Law ("UCL"), where the UCL claims are predicated on the alleged violations of the federal Fair Labor Standards Act.)

Plaintiffs' motion is based on the accompanying Memorandum of Points and Authorities, the declarations filed herewith, the arguments presented at the hearing, and any other papers on file in this case.

Respectfully Submitted,

Date: May 3, 2007

SCHNEIDER & WALLACE

_____

Hank Willson
Counsel for Plaintiffs and the putative Class

SCHNEIDER
& WALLACE

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................1

II. PROCEDURAL HISTORY.....................................................................................4

III. STATEMENT OF FACTS ......................................................................................5

    A.    THE PARTIES.................................................................................................5

          1.    The Plaintiffs.................................................................................5

          2.    Oracle Corporation........................................................................6

    B.    THE SALES CONSULTANT POSITION AT ORACLE ..........................6

          1.    Oracle's Sales Consultants Have the Same Role and Job Duties across Oracle Divisions and Industries.................................................6

          2.    Whether Oracle's Sales Consultants Meet Any of the Exemptions From Overtime Under the Fair Labor Standards Act Presents Common Questions of Law or Fact..................................................................9

              a)    The Executive Exemption................................................9

              b)    The Outside Sales and Commission Sales Exemptions.............10

              c)    The Learned Professional Exemption...............................11

              d)    The Administrative Exemption.........................................11

              e)    The Computer Occupation Professional Exemption....................13

          3.    Oracle Uniformly Reclassified Its Sales Consultants As a Group Using the Same Rationale and Procedure for All Sales Consultants, but Uniformly Refused to Provide Them Any Back Pay for Their Overtime Labor Prior to the Reclassification. ..................................................13

          4.    It Is Common for Oracle's Sales Consultants to Work Overtime Hours; Before the Reclassification, None Received Overtime Compensation. ...............15

IV. ARGUMENT ........................................................................................................16

    A.    THE PROPOSED CLASS DEFINITIONS ................................................16

    B.    CLASS CERTIFICATION DOES NOT INVOLVE A DETERMINATION OF THE MERITS OF PLAINTIFFS' CLAIMS, ALTHOUGH IT IS INFORMED BY THE UNDERLYING PUBLIC POLICY IN FAVOR OF BROAD ENFORCEMENT OF THE OVERTIME LAWS ...........................17

    C.    THIS PROPOSED CLASSES ARE NUMEROUS AND JOINDER OF ALL PARTIES IS IMPRACTICABLE.................................................................19

    D.    THIS CASE RAISES NUMEROUS COMMON QUESTIONS OF LAW AND FACT.......................................................................................................19

SCHNEIDER
& WALLACE

E.   PLAINTIFFS' CLAIMS ARE TYPICAL OF THOSE OF THE CLASS.......................20

F.   PLAINTIFFS AND PLAINTIFFS' COUNSEL ARE ADEQUATE
     REPRESENTATIVES OF THE CLASS.........................................................................21

G.   CLASS CERTIFICATION IS APPROPRIATE UNDER FRCP 23(B)(3)
     BECAUSE COMMON QUESTIONS OF LAW AND FACT
     PREDOMINATE AND THE CLASS MECHANISM IS SUPERIOR TO
     THE ALTERNATIVES OF PIECEMIEL LITIGATION OR
     UNDERENFORCEMENT OF THE OVERTIME LAWS ...........................................21

H.   ALTERNATIVELY, CLASS CERTIFICATION IS APPROPRIATE
     UNDER FRCP 23(B)(2) BECAUSE ORACLE HAS ACTED ON
     GROUNDS GENERALLY APPLICABLE TO THE CLASS, MAKING
     EQUITABLE RELIEF (IN THE FORM OF BACK PAY) APPROPRIATE ..............24

V.   CONCLUSION..........................................................................................................24

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. City of Albuquerque*, 690 F.2d 796 (10th Cir. 1982) ...................................17

*Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81 (S.D.N.Y. 2001 ...................23

*Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728 (1981) ...................18, 23

*Chavez v. IBP, Inc.*, 2002 WL 31662302 (E.D. Wash. 2002).............................................23

*Committee of Blind Vendors of District of Columbia v. District of Columbia*, 695
      F.Supp. 1234 (D.D.C. 1988), reversed on other grounds by 28 F.3d 130 (D.C. Cir.
      1994.............................................................................................................................19

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................18

*Eisen v. Carlisle and Jacquelin*, 391 F.2d 555 (2d Cir. 1968).........................................21

*Farley v. Sullivan*, 793 F.Supp. 1267 (D.Vt. 1992)..........................................................19

*Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273 (S.D.Ala. 2006)..................16

*Frank v. Gold'n Plump Poultry, Inc.*, 2005 WL 2240336 (D.Minn. 2005 ........................23

*Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377 (D.Or. 1996)...........................18

*General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147 (1982)....................16, 18, 20, 21

*Guenther v. Pacific Telecom, Inc.*, 123 F.R.D. 333 (D.Or.1988)......................................18

*Gunter v. Ridgewood Engery Corp.*, 164 F.R.D. 391 (D.N.J. 1996) ................................22

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ..........................................20

*Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 65 (D.Minn. 1991)......................................19

*Jordan v. Commonwealth Financial Systems, Inc.*, 237 F.R.D. 132 (E.D.Pa. 2006).....................16

*Kanter v. Casey*, 43 F.3d 48 (3d Cir. 1994) .............................................................19, 20

*Leyva v. Buley*, 125 F.R.D. 512 (E.D.Wash. 1989)..........................................................19

*McCarthy v. Kleindienst*, 741 F.2d 1406 (D.C. Cir. 1984) ..............................................22

*Miller v. Mackey International*, 452 F.2d 424 (5th Cir. 1971)..........................................18

*Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475 (9th Cir. 1983)...................................18

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)....................................................23

*Polich v. Burlington Northern, Inc.*, 116 F.R.D. 258 (D.Mont. 1987)..............................19

*Savino v. Computer Credit, Inc.*, 173 F.R.D. 346 (E.D.N.Y. 1997)..................................19

*Schreiber v. NCAA*, 167 F.R.D. 169 (D.Kan. 1996)...................................................18

*Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990) .........................17

*Stewart v. Abraham*, 275 F.3d 220 (3d Cir. 2001) ...................................................19

*Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597 (E.D.La.2006) .........................17

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ........................22, 23


**State Cases**

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999) .........................17

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163 (2000)...........................24

*Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal.4th 1036 (1999)...........................17

*Earley v. Superior Court*, 79 Cal.App.4th 1420 (2000) ...................................................19

*Industrial Welfare Com. v. Superior Court*, 27 Cal.3d 690 (1980)........................19, 23

*Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319 (2004) ........................18, 23


**Federal Statutes**

29 U.S.C. §207(i) ...................................................10

29 U.S.C. §216(b)...................................................3, 23

FRCP 23(a)(1) ...................................................19

FRCP 23(a)(2) ...................................................19

FRCP 23(a)(3) ...................................................20

FRCP 24(a)(4) ...................................................21

FRCP 23(b)(2) ...................................................24

FRCP 23(b)(3) ...................................................21-22


**State Statutes**

Cal. Labor Code §515 ...................................................9, 13

SCHNEIDER
& WALLACE

**Federal Regulations**

29 C.F.R. §541.10 ........................................................................................................9

29 C.F.R. §541.20 ......................................................................................................11

29 C.F.R. §541.301(a) ...............................................................................................11

29 C.F.R. §541.40 ......................................................................................................13

29 C.F.R. §541.70 ........................................................................................................9

29 C.F.R. §541.500 ....................................................................................................10

29 C.F.R. §541.502 ....................................................................................................10

SCHNEIDER
& WALLACE

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

This case seeks unpaid overtime wages and corresponding penalties for all individuals employed in the position of "sales consultant" of Oracle Corporation and who worked overtime hours without overtime pay within the applicable statute of limitations period.   Until a reclassification process that occurred between October 2005 and September 2006, Oracle uniformly classified all such employees as "exempt" from overtime based on their common job description and role within the company.  Since the reclassification, Oracle has begun to pay its sales consultants overtime.  Oracle's Human Resource documents and manager witnesses in deposition have explained that the reclassification took place because of an evolution in the way the industry was coming to terms with the overtime requirements of the Fair Labor Standards Act ("FLSA"), as it applied to the position of "sales consulting."  Despite this refined thinking, however, Oracle still has not paid back any of its sales consultants the premium wages they earned for working overtime hours while the company still had not considered them eligible for overtime pay.  This case is filed as a class action to recoup this unpaid overtime on behalf of the approximately 1,200 sales consultant employees in the proposed class.

The discovery conducted to date—including depositions of Oracle's managers, vice presidents and designee witnesses, the review of Oracle documents describing the sales consulting position, as well as the depositions of the three named plaintiffs—shows that Oracle's Sales Consultant employees have performed the same role for the company and are subject to the same compensation policies, no matter where in the United States they work.  In deposition after deposition, Oracle's management testified to a basic set of job duties performed by Sales Consultants at Oracle, often using general terms like "we" to describe Sales Consultants as a "family" or "community" with the same interests and expectations.  Furthermore, Oracle's "████████████," distributed to all Sales Consultants and their supervisors, describes sales consulting as "████████████████████████████████," rather than a job that varies significantly from individual to individual.  ████████████████████████████ ████████ (Bates Stamped D000000377-D000000384, attached as Exhibit O to Declaration of

Rachel Brill in Support of Plaintiffs' Motion for Class Certification ("Brill Decl.") (emphasis added).

No matter where and at what level the sales consultants are employed, they perform a common set of job duties for Oracle as follows:

- Sales Consultants work with one or more "Account Managers." The Account Managers are the actual "sales representatives" responsible for securing clients, negotiating sales and directing the sale process.

- Sales Consultants assist the Account Managers by providing detailed product information (e.g. specifications and possible uses or configurations) to the Account Managers and the customers or potential customers of the Account Managers. Sales Consultants do *not* design the software products, set or negotiate the price of the products, or decide which products Oracle will develop or offer to the public.

- Sales consultants conduct presentations (*e.g.*, PowerPoint) of the features of Oracle products as well as demonstrations of how the products actually work in practice. (A demonstration is sometimes called a "proof of concept" or a "benchmark.") Oracle has various programs and tools that provide Sales Consultants with templates for these tasks. While the Sales Consultants use their knowledge of Oracle's existing product line and the customer's industry (often gained through interviews with the customer's employees) to identify appropriate products for presentation or demonstration, they are not in product development, nor do they have any management discretion with respect to Oracle's or the customer's business.

- Sales consultants at Oracle also make presentations and demonstrations outside the context of a specific customer, usually at some sort of gathering organized by Oracle or another group interested in Oracle technology. At these gatherings, sales consultants will make presentations or do demonstrations, very similar to the presentations and demonstrations done with specific customers, to show the features of Oracle products and how Oracle products will perform in various situations.

- Sales Consultants participate in some "special projects," usually requiring them to upload the information and applications they use for presentations and demonstrations onto central Oracle servers so that they can be duplicated and used by Oracle sales consultants from around the country.

- Sales Consultants are subject to the same human resource policies and procedures, including a common wage scale and the same exempt/non-exempt classification by virtue of their job codes.

As demonstrated by the recent reclassification, Oracle views all sales consultants as similarly situated in terms of their job duties and purpose in the company. Other than the decision to stagger the implementation of the reclassification so that certain groups were reclassified in 2005 and others in 2006, the procedures, documentation and rationale Oracle provided for the reclassification was identical for all Sales Consultants throughout the United States. There was no individualized evaluation of any particular sales consultant or any consideration of how the duties of some sales consultants might differ from others in terms of reaching a decision regarding exempt or nonexempt status. To the contrary, Oracle uniformly applied the reclassification to the sales consultant position as a whole. Moreover, Oracle's managers confirmed in deposition that there was no change in the job duties of Sales Consultants from before the reclassification until after the reclassification. Again, the decision was made on a class basis without reference to any particular changes in any employee's job or any variations between any sales consultants.

Pursuant to Federal Rule of Civil Procedure ("FRCP") 23(a) and (b)(3), Plaintiffs move for class certification of two classes: one covering all sales consultants in California during the applicable statute of limitations and the other covering all sales consultants nationwide. The causes of action applicable to each proposed class, the relationship of the two classes to one another and to Plaintiffs' Fair Labor Standards Act ("FLSA") claims (which will be subject to a separate Motion to Facilitate Class Notice pursuant to 29 U.S.C. §216(b)), and the reasons why Plaintiffs meet the requirements for class certification, are all discussed in more detail below.

In summary, the common role and defined "group of tasks" shared by all sales consultants of Oracle across the country create numerous common questions of law and fact that will

1    predominate throughout each class member's claim.  Indeed, the fundamental question of whether

2    the common set of duties set forth above describe an exempt or nonexempt position under

3    applicable law lies at the heart of each such claim.  For example, any court addressing the claim of

4    an individual sales consultant would need to adjudicate whether putting together demonstrations of

5    software products rises to the level of software engineering for purposes of the computer

6    professional exemption, or whether a sales consultant can meet the administrative exemption test

7    by virtue of having a high degree of industry knowledge, even if there is no exercise of discretion

8    over product development or business policy.  These same questions and many similar ones will

9    predominate each class member's claim and would need to be re-litigated over and over again in

10   multiple individual lawsuits if Plaintiffs could not proceed with a single class action here.  No

11   doubt, this would cause a substantial drain on judicial resources and risk numerous inconsistent

12   judgments.  It would also contravene the strong federal and state public policy in favor of broad

13   and effective enforcement of overtime laws.  For all these reasons, the Court should grant

14   Plaintiffs' Motion for Class Certification.

15   **II.    PROCEDURAL HISTORY**

16          Plaintiffs filed their initial class action complaint on October 17, 2006, on behalf of sales

17   consultants in California and throughout the country.  The Complaint contains causes of action for:

18   (1) violations of the FLSA overtime provisions; (2) violations of the overtime provisions of the

19   California Labor Code and the California Industrial Welfare Commission ("IWC") Wage Order;

20   (3) failure to provide meal and rest periods under California's Labor Code and the IWC Wage

21   Order, (4) failure to provide accurate and timely itemized wage statements under the California

22   Labor Code; (5) failure to timely pay all wages owed in violation of the California Labor Code; (6)

23   failure to promptly pay wages owed upon the end of employment and resulting penalties; and (7)

24   violation of California's Unfair Business Practices Act ("UCL"), California Business and

25   Professions Code §§17200, *et seq.*, as a result of the violations of FLSA and California law alleged

26   above.  The Complaint seeks unpaid wages, penalties, liquidated damages under FLSA, attorneys'

27   fees and injunctive relief.

28

1  Oracle requested an extension to respond, which Plaintiffs granted, and Oracle filed its

2 answer on January 19, 2007.  The Court held its Initial Case Management Conference on January

3 11, 2007, and set dates for Plaintiffs' filing of this Motion, as well as a date by which the parties

4 were to choose and schedule a mediator and mediation date.

5  Since that initial Case Management Conference, Plaintiffs through discovery have obtained

6 Oracle documents describing the sales consulting position for the company and other corporate-

7 wide practices pertaining to job expectations and compensation.  Plaintiffs also have deposed 11 of

8 Oracle's Sales Consulting managers, directors and vice presidents, and one human resources senior

9 manager, to investigate the job duties and pay practices pertaining to the Sales Consultants.

10 Additionally, all three of the named Plaintiffs have searched extensively for and produced

11 documents in response to Oracle's document requests and have appeared for deposition.

12  The parties are scheduled for a full day mediation on May 7, 2007, before David Rotman in

13 San Francisco.

14 **III. STATEMENT OF FACTS**

15  **A. THE PARTIES**

16   **1. The Plaintiffs**

17  Plaintiff Kakani was employed by Oracle as a Sales Consultant from on or about January 1,

18 2000, to on or about June 30, 2003.  Complaint at ¶ 14.  He worked in the Oracle Direct

19 organization.  Declaration of Madhav Kakani in Support of Plaintiffs' Motion for Class

20 Certification ("Kakani Decl.") at ¶ 13.  He was based out of Oracle's Redwood Shores, CA office.

21 Deposition of Madhav Kakani, taken April 30 ("Kakani Depo."), attached as Exhibit A to the

22 Declaration of Rachel E. Brill ("Brill Decl."), at 66:4-6.  He worked with Sales Consultants from

23 other Oracle divisions.  Kakani Depo. at 60:24-61:13

24  Plaintiff Brin was employed by Defendant as a Sales Consultant from on or about July 1,

25 1999, to on or about May 31, 2004.  Complaint at ¶ 15.  He worked in the Oracle Direct

26 organization.  Declaration of Gennady Brin in Support of Plaintiffs' Motion for Class Certification

27 ("Brin Decl.") at ¶ 7.  He was based out of Oracle's Redwood Shores, CA office.  Deposition of

28

SCHNEIDER
& WALLACE

1   Gennady Brin, taken April 18, 2007 ("Brin Depo."), attached as Exhibit B to Brill Decl., at 10:23-

2   11:2.

3        Plaintiff Ranjiv Jain was employed by Defendant as a Sales Consultant from on or about

4   September 1, 1998, to on or about February 17, 2006. Complaint at ¶ 16. He worked in the Major

5   Accounts, General Business, and Consumer Process Goods divisions. Declaration of Ranjiv Jain

6   in Support of Plaintiffs' Motion for Class Certification ("Jain Decl.") at ¶ 2. He was based out of

7   Oracle's Bellevue, WA office. Deposition of Ranjiv Jain, taken April 23, 2007 ("Jain Depo."),

8   attached as Exhibit C to Brill Decl., at 66:7-67:17; Jain Decl. at ¶ 2.

9        **2.  Oracle Corporation**

10       Founded in 1977, Oracle is a corporation that develops, markets, and sells software products

11  that assist its customers in a variety of areas.[1]  Oracle is headquartered in Redwood Shores,

12  California, and is incorporated in California.[2]  It and has approximately 55,000 employees

13  worldwide.[3]  Data provided to Plaintiffs' counsel in response to discovery requests show that, over

14  the four year limitations period of this action, Oracle has employed approximately 258 Sales

15  Consultants in California and 1,200 in the United States.[4]  Oracle's most recent financial

16  statements reflect $4,414,000,000 in total revenue, and $1,394,000,000 in operating income.[5]

17  **B.  THE SALES CONSULTANT POSITION AT ORACLE**

18       **1.  Oracle's Sales Consultants Have the Same Role and Job Duties across Oracle
            Divisions and Industries**

19

20  Sales Consultants work in a variety of different organizations at Oracle.[6]  Within the Sales

21  Consultant "job family,"[7] there are six levels of Sales Consultants: Associate, Staff, Senior,

---

[1] *See* History | Oracle Corporation, available at http://www.oracle.com/corporate/story.html (last visited April 28, 2007)

[2] *See* History | Oracle Corporation, available at http://www.oracle.com/corporate/story.html (last visited April 28, 2007)

[3] *See* History | Oracle Corporation, available at http://www.oracle.com/corporate/story.html (last visited April 28, 2007).

[4] See Declaration of Todd M. Schneider in Support of Plaintiffs' Motion for Class Certification at ¶ 10.

[5] See Oracle Corporation, available at http://finance.google.com/finance?q=ORCL (last visited April 30, 2007).

[6] Deposition of Gayle Fitzpatrick, taken April 17, 2007 ("Fitzpatrick Depo."), attached as Exhibit D to Brill Decl., at 34:17-3:7; Deposition of Steven Vakulskas, taken April 27, 2007 ("Vakulskas Depo."), attached as Exhibit E to Brill Decl., at 41:17-42:5.

Principal, Master Principal, and Team Lead.[8]  Although there is some variation among the levels, Sales Consultants at all levels and across Oracle's different departments have the same general role: they provide information to Oracle Sales Representatives (also referred to as Account Managers) and Oracle customers or potential customers regarding the specifications and uses of various Oracle products.[9]  Both the Plaintiff Sales Consultants and the array of managers deposed by Plaintiffs' counsel to date agree that a major part of this work consists of preparing and performing presentations and demonstrations of the products so that the customer and the sales representative can observe how those products work.[10]  The testimony provided in these depositions has also repeatedly confirmed that Sales Consultants do not design these products, determine which products will be in Oracle's product line, determine the price of the product, or negotiate the sale of the product.[11]

Managers from various Oracle departments have also repeatedly confirmed that individual sales consultants, regardless of their job level, fulfill their basic role by performing a common set of tasks: (1) meeting with customers and discussing their business needs, often using standardized scripts and checklists provided by Oracle management;[12] (2) selecting and combining items

---

[7] Deposition of Grant Franjione, taken April 20, 2007 ("Franjione Depo."), attached as Exhibit F to Brill Decl., at 96:19, 104:23, 129:9-10; Fitzpatrick Depo. at 179:6, 179:16.

[8] Deposition of Lee Paulino, taken April 19, 2007 ("Paulino Depo."), attached as Exhibit G to Brill Decl., at 35:20-24; Deposition of Clarence DeLaine, taken April 11, 2007 ("DeLaine Depo. Vol. I"), attached as Exhibit H to Brill Decl., at 32:10-17, Fitzpatrick Depo. at 40:12-16, 167:6-12; Deposition of Donald Gruesu, taken April 26, 2007 ("Gruesu Depo."), attached as Exhibit I to Brill Decl., at 57:9-24; Deposition of Peter Doolan, taken April 26, 2007 ("Doolan Depo."), attached as Exhibit J to Brill Decl., at 41:14-42:1.

[9] Although Oracle's manager deponents had clearly been coached to claim they knew only about the group of Sales Consultants that they were personally supervising at the time of the deposition, they candidly admitted that they had knowledge of more than just their own groups based on supervision of other Sales consultants and manager meetings. *See, e.g.,* Deposition of Paul Cross, taken April 29, 2007 ("Cross Depo."), attached as Exhibit N to Brill Decl. at 19:21-23:9; Paulino Depo. at 10:14-16:18; Kakani Depo. at 159:9-22.

[10] Franjione Depo. at 52:7-9, 52:2-6; Paulino Depo. at 65:17-66:3, 80:5-81:17; Filice Depo. at 65:10-16; DeLaine Depo. Vol. I at 41:12-43:3, 82:1-7; Driver Depo. at 113:12-15; Fitzpatrick Depo. at 111:12-114:7, 117:10-24, 152:12-20, 201:3-17; Gruesu Depo. at 47:17-49:2; Doolan Depo. at 150:3-10; Jain Depo. at 76:7-9, 77:21-78:1, 88:18-22, 89:5-90:3, 95:8-11, 150:15-152:13; Kakani Depo. at 85:6-13, 88:21-89:1, 99:12-18, 129:2-24, 131:10-133:18, 138:22-140:5, 143:6-144:3, 175:21-180:14.

[11] Cross Depo. at 134:7-11, 134:12-22, 144:7-145:3; Filice Depo. at 136:3-6, 154:18-155:12; Seablooom Depo. at 78:14-25, 19:3-7; 110:4-8, 136:6-9; Paulino Depo. at 43:10-22, 44:6-9; DeLaine Depo. Vol. I at 45:17-23; DeLaine Depo. Vol. II at 210:6-214:8; Driver Depo. at 191:24-192:2, 201:5-16; Fitzpatrick Depo. at 196:6-9, 199:15-200:1; Gruesu Depo. at 105:16-20; Doolan Depo. at 76:7-23, 82:20-85:25, 152:8-154:4; Vakulskas Depo. at 230:6-16; Kakani Depo. at 147:9-19.

[12] Franjione Depo. at 51:23-52:1; Deposition of Peter Filice, taken April 24, 2007 ("Filice Depo."), attached as Exhibit K to Brill Decl., at 26:17-22, 46:12-20; Paulino Depo. at 18:23-19:7; Deposition of Clarence DeLaine, taken April 12,

1   (sometimes called "modules") from the preexisting computer software lines into packages to show

2   the Oracle Sales Representatives and their customers;[13] (3) preparing and giving presentations and

3   demonstrations of the products to the Sales Representative and Oracle's customers;[14] and (4)

4   attending trade shows and "tech days" to give similar presentations and demonstrations of Oracle

5   products.[15] The evidence shows that Sales Consultants engage in this same "**group of tasks**,"[16]

6   and fill the same general role, across the various departments and industry areas in which they

7   work, as well as across the United States.[17] Moreover, as a Sales Consultant moves up the various

8   levels listed above, her/his job duties and tasks remain generally the same (although over time

9   individual Sales Consultants gain more knowledge about the Oracle software products with which

10  they work).[18]

11      In addition to sharing the above-listed job duties, Sales Consultants have other common

12  characteristics. They are uniformly categorized as "Individual Contributors," a term used by

13  Oracle specifically to connote "non-managers."[19] Their salaries are standardized by Oracle's

---

15  2007 ("DeLaine Depo. Vol. II"), attached as Exhibit L to Brill Decl., at 165:13-166:7; Deposition of Adam Driver, taken April 13, 2007 ("Driver Depo."), attached as Exhibit M to Brill Decl., at 111:11-112:17; Fitzpatrick Depo. at 109:11-25, 111:2-9, 115:21-116:14; Doolan Depo. at 56:21-59:8; Vakulskas Depo. at 65:3-67:9; Brin Depo. at 118:5-119:13, 122:8-124:13, 125:12-127:6; Jain Depo. at 87:23-88:17, 131:19-132:11, 145:1-146:13; Kakani Depo. at 78:6-12. 174:6-175:11.

16  [13] Franjione Depo. at 52:2-6; Paulino Depo. at 65:17-66:3, 80:5-81:17; DeLaine Depo. Vol. I at 82:1-7; Driver Depo. at 113:12-15; Fitzpatrick Depo. at 117:10-24, 201:3-17; Gruesu Depo. at 47:17-49:2; Doolan Depo. at 150:3-10; Jain Depo. at 88:18-22, 150:15-152:13; Kakani Depo. at 85:6-13, 88:21-89:1, 99:12-18, 175:21-180:14.

18  [14] Deposition of Paul Cross, taken April 29, 2007 ("Cross Depo."), attached as Exhibit N to the Brill Decl. at 51:3-5; Franjione Depo. at 52:7-9; Filice Depo. at 65:10-16; DeLaine Depo. Vol. I at 41:12-43:3; Driver Depo. at 113:12-15; Fitzpatrick Depo. at 111:12-114:7, 152:12-20; Jain Depo. at 76:7-9, 77:21-78:1, 89:5-90:3, 95:8-11; Kakani Depo. at 129:2-24, 131:10-133:18, 138:22-140:5, 143:6-144:3.

20  [15] Filice Depo. at 31:22-25, 48:7-13; Driver Depo. at 107:10-14; Fitzpatrick Depo. at 125:6-16; Vakulskas Depo. at 108:3-109:15; Brin Depo. at 65:2-66:1, 67:25-68:18, 149:2-24; Jain Depo. at 173:1-175:13; Kakani Depo. at 167:1-168:12, 170:17-171:21.

22  [16] *See, e.g.,* ███████████████████████████ (Bates Stamped D000000377-D000000384), attached as Exhibit O to Brill Decl., at p.2 (████████████████████████ ██).

24  [17] Cross Depo. at 30:23-31:5, 39:10-20, 68:25-69:8; Franjione Depo. at 85:2-18; Filice Depo. at 70:9-73:14; Paulino Depo. at 20:8-20; Fitzpatrick Depo. at 73:9-14; Jain Depo. at 71:21-72:11, 73:10-18, 78:25-79:6; Brin Depo. at 78:10-16, 84:4-12, 92:16-93:1, 114:13-17, 115:10-15.

25  [18] Cross Depo. at 50:3-14; Filice Depo. at 41:7-42:13; Driver Depo. at 73:12-74:8. 79:4-24, 124:22-125:4. 139:23-140:6; Vakulskas Depo. at 33:4-16.

26  [19] Cross Depo. at 39:21-25, 40:9-15; Franjione Depo. at 38:13-23; Filice Depo. at 32:3-15; Deposition of Jeffrey Seabloom, taken April 18, 2007 ("Seabloom Depo."), attached as Exhibit P to Brill Decl., at 121:15-122:12; Paulino Depo. at 35:7-36:5; DeLaine Depo. Vol. I at 16:7-14; Driver Depo. at 27:15-28:22; Fitzpatrick Depo. at 33:11-18; Gruesu Depo. at 53:5-54:11; Deposition of Christine Liscinsky, taken April 25, 2007 ("Liscinsky Depo."), attached as Exhibit Q to Brill Decl., at 32:20-33:2; Brin Depo. at 205:6-24.

---

SCHNEIDER
& WALLACE

1   Human Resources department, which operates on an Oracle-wide basis.[20]  There is a baseline

2   written job description for Sales Consultants available to hiring managers, who will then add

3   details according to the industry in which they work.[21]  Oracle's managers also testified across the

4   board that there is no requirement that Sales Consultants achieve any particular level of education

5   as a qualification for employment.[22]

6       **2.  Whether Oracle's Sales Consultants Meet Any of the Exemptions From
            Overtime Under the Fair Labor Standards Act Presents Common Questions of**

7       **Law or Fact.**

8       Plaintiffs anticipate that Oracle will attempt to justify its initial classification of the Sales

9   Consultants using one of the exemptions provided by the Fair Labor Standards Act ("FLSA")

10  and/or California law.  Regardless of how the Court resolves this merits question, determining

11  whether the Sales Consultants meet the tests for any of the exemptions will involve the following

12  common set of facts.

13      **a)  The Executive Exemption**

14      The executive exemption applies to employees whose primary duty consists of managing

15  either the business or division of business where they work, and who regularly direct the work or

16  two or more other employees at that business.  29 C.F.R. § 541.100; IWC Wage Order 4-2001 at

17  1(A)(1).[23]  As discussed above, Oracle uniformly classifies its sales consultants as "individual

18  contributors," meaning—in Oracle's own terms—"non-management."[24]  Moreover, according to

19

20

---

21  [20] Cross Depo. at 45:14-21; Franjione Depo. at 38:24-39:14; Seabloom Depo. at 99:11-100:15; Paulino Depo. at 46:18-47:17.

22  [21] Cross Depo. at 66:9-22; Franjione Depo. at 82:1-3; Gruesu Depo. at 65:25-67:8.

23  [22] Cross Depo. at 61:7-22; Franjione Depo. at 59:19-24; Filice Depo. at 51:13-52:8; Seabloom Depo. at 113:16-18;
    Paulino Depo. at 55:21-56:6; Driver Depo. at 129:14-130:11; Gruesu Depo. at 112:19-113:7.  *But see* Doolan Depo. at
24  71:1-72:23 (suggesting that some managers might seek out employees based on certain preferred educational
    backgrounds, while admitting that there is no such requirement anywhere at Oracle).

25  [23] The FLSA refers to "primary duties," while California law refers to an employee being "primarily engaged in" an
    activity.  Under California law, an employee is "primarily engaged in" non-exempt duties if s/he spends more than
26  50% of her/his time engaged in those duties.  Cal. Labor Code § 515(e).  By contrast, under federal law, while an
    employee may be found exempt if s/he spends more than 50% of her/his time on exempt duties, factors other than time
    will be weighed. 29 C.F.R. § 541.700.

27  [24] Cross Depo. at 39:21-25, 40:9-15; Franjione Depo. at 38:13-23; Filice Depo. at 32:3-15; Seabloom Depo. at 121:15-
    122:12; Paulino Depo. at 34:3-5, 35:3-5, 35:25-35:2; DeLaine Depo. Vol. I at 16:7-14; Driver Depo. at 27:19-24;
28  Fitzpatrick Depo. at 33:11-18; Gruesu Depo. at 53:5-54:11; Brin Depo. at 205:6-206:15.

Oracle's managers, the Sales Consultants do not hire or fire other employees.[25]  No other Oracle employees report directly to Sales Consultants.[26]  Sales Consultants do not conduct or design performance evaluations.[27]  They do not have the authority to discipline or counsel other employees, or even to assign work-related tasks to other Sales Consultants.[28]  Sales Consultants do not make decisions about office location, what products to develop, when to roll out new products, or how to market or advertise new products.[29]  Nor do they determine the terms, language, or prices of sales agreements.[30]  As demonstrated by the testimony cited above, this is common – even uniform – for Sales Consultants throughout California and the United States.

### b) The Outside Sales and Commission Sales Exemptions

An outside sales person is an individual whose primary duty is making sales or getting customer orders, and whose work customarily and regularly takes place away from the employer's place of business (either an employer-owned location or any other fixed site).  29 C.F.R. §§541.500, 541.502; IWC Wage Order 4-2001 at 2(J).  To qualify for the commissions sales person exemption, the employee must receive more than half of her/his compensation from commissions.  29 U.S.C. §207(i); IWC Wage Order 4-2001 at 3(D).

Oracle's managers have confirmed that Sales Consultants, no matter their industry or location in the United States, do not make sales.  They do not seek out new customers, get

---

[25] Cross Depo. at 124:10-125:12; Franjione Depo. at 144:25-145:12; Filice Depo. at 123:15-124:8; Seabloom Depo. at 112:16-18; Paulino Depo. at 38:11-39:1; DeLaine Depo. Vol. II at 201:18-24; Driver Depo. at 187:24-189:12; Fitzpatrick Depo. at 190:5-8, 192:5-6, 194:3:5-9, 194:2-4; Gruesu Depo. at 103:16-22; Doolan Depo. at 77:15-78:25; Vakulskas Depo. at 214:18-21.

[26] Cross Depo. at 127:8-12; Franjione Depo. at 145:25-146:2; Filice Depo. at 125:20-23; DeLaine Depo. Vol. II at 196:21-197:5; Driver Depo. at 173:21-23; Fitzpatrick Depo. at 33:21-34, 189:24-190:1; Gruesu Depo. at 104:4-7; Vakulskas Depo. at 217:6-10.

[27] Cross Depo. at 128:8-129:1; Franjione Depo. at 146:3-19; Filice Depo. at 125:24-126:20; Seabloom Depo. at 113:21-25; Paulino Depo. at 39:11-16; DeLaine Depo. Vol. II at 197:6-10; Driver Depo. at 173:24-176:19; Fitzpatrick Depo. at 190:2-4; Doolan Depo. at 79:19-82:19.

[28] Cross Depo. at 129:2-7; Franjione Depo. at 46:14-16; Filice Depo. at 126:23-127:8; Seabloom Depo. at 113:21-25; Paulino Depo. at 39:2-9; DeLaine Depo. Vol. II at 197:11-199:23; Driver Depo. at 176:21-177:18; Fitzpatrick Depo. at 194:18-21; Gruesu Depo. at 104:8-13; Doolan Depo. at 79:2-17; Vakulskas Depo. at 221:18-222:9; Jain Depo. at 121:9-15.

[29] Franjione Depo. at 147:15-148:24; Filice Depo. at 128:3-133:19; DeLaine Depo. Vol. II at 199:24-200:7; Driver Depo. at 181:1-184:3, 185:14-186:9, 191:8-10; Gruesu Depo. at 104:21-105:9; Vakulskas Depo. at 224:4-226:11.

[30] Cross Depo. at 131:10-14; Franjione Depo. at 152:5-11; Filice Depo. at 133:20-134:23; Driver Depo. at 191:11-192:2; Gruesu Depo. at 105:10-20.

SCHNEIDER
& WALLACE

1  commitments from customers, or deal with contract negotiations.[31]  As a matter of the company's

2  overall organizational structure, these duties are carried out by the Sales Representatives.[32]  Sales

3  Consultants do not make a commission on the sales of Oracle Products.[33]

### c)  The Learned Professional Exemption

A learned profession is one that (1) requires knowledge of an advanced type, (2) in a field of
science or learning, (3) which is customarily acquired by a prolonged course of study, as opposed
to general academic education.  29 C.F.R. §541.301(a); IWC Wage Order 4-2001 at 1(A)(3).
According to Oracle's managers, there is no requirement that Sales Consultants have a set level of
educational attainment.[34]  Although Sales Consultants are expected to be familiar with the field in
which they work, and the technology with which they work, they are not required to be licensed or
certified by the government or some other entity to do their jobs.[35]

### d)  The Administrative Exemption

Employees may qualify as exempt administrative employees if their primary duty consists
of the performance of office or non-manual work directly related to management policies or
general business operations of the employer, and if they exercise discretion and independent
judgment on matters of significance.  29 C.F.R. §541.200; IWC Wage Order 4-2001 at 1(A)(2).
"The exercise of discretion and independent judgment must be more than the use of skill in
applying well-established techniques, procedures or specific standards described in manuals or
other sources."  29 C.F.R. §541.202.

---

[31] Cross Depo. at 133:1-5, 140:24-141:14; Franjione Depo. at 68:9-17; Filice Depo. at 135:18-136:1; Seabloom Depo. at 95:9-17; Paulino Depo. at 37:13-38:9, 86:25-87:11; DeLaine Depo. Vol. I at 19:7-12; DeLaine Depo. Vol. II at 194:25-195:4; Driver Depo. at 181:1-184:3, 191:6-192:2; Fitzpatrick Depo. at 196:16-20; Gruesu Depo. at 105:24-106:10; Vakulskas Depo. at 227:23-228:22.

[32] Cross Depo. at 133:1-5, 140:18-20; Franjione Depo. at 163:20-24; DeLaine Depo. Vol. I at 49:11-15; DeLaine Depo. Vol. II at 209:21-210:5; Fitzpatrick Depo. at 197:3-19; Gruesu Depo. at 65:2-4; Doolan Depo. at 115:16-117:12; Vakulskas Depo. at 228:15-22; Brin Depo. at 85:7-19; Jain Depo. at 76:2-9, 138:2-12.

[33] Cross Depo. at 141:25-142:3; Franjione Depo. at 163:24-164:13; Filice Depo. at 147:21-148:3; Seabloom Depo. at 97:2-99:5; Paulino Depo. at 37:6-12; DeLaine Depo. Vol II at 209:10-13; Driver Depo. at 197:20-24; Fitzpatrick Depo. at 198:18-21; Gruesu Depo. at 61:19-62:4; Doolan Depo. at 75:20-76:2; Vakulskas Depo. at 228:23-229:25.

[34] Cross Depo. at 60:20-23; Franjione Depo. at 59:19-24; Filice Depo. at 52:13-53:8; Seabloom Depo. at 112:16-18; Paulino Depo. at 56:24-57:8; DeLaine Depo. Vol. II at 207:6-14; Driver Depo. at 129:14-130:11; Gruesu Depo. at 112:19-113:7; Vakulskas Depo. at 226:12-227:22.

[35] Cross Depo. at 138:22-140:3; Franjione Depo. at 160:12-19; Filice Depo. at 140:9-141:11; Driver Depo. at 194:4-14; Fitzpatrick Depo. at 197:20-198:17.

1   It is a common fact at Oracle that Sales Consultants do not perform work directly related to

2   management policies or general business operations of the employer.[36]  For example, Sales

3   Consultants do not have any role in negotiating the price or terms of a sale with customers.[37]  They

4   do not negotiate the lease or purchase of office space.[38]  Sales Consultants do not decide which

5   products Oracle will develop or sell.[39]  They do not decide salaries, hourly rates, bonuses, or when

6   to hire new employees.[40]  Sales Consultants do not decide which benefits or pension plans Oracle

7   will offer to its employees[41], or which employees are exempt and which are non-exempt.[42]  Nor do

8   they make decisions regarding the overall size of staff or the budget.[43]

9   Plaintiffs anticipate that Defendant will attempt to justify its previous classification of the

10   Sales Consultants as exempt by claiming that Sales Consultants exercise independent judgment

11   and discretion.  Independent judgment and discretion is meaningless, however, unless the

12   employee is also primarily engaged in work directly related to policy or business operations.  Thus,

13   resolution of the defense will turn on multiple common facts related to the basic role of Sales

14   Consultants: whatever knowledge base and analytic skills Sales Consultants may use when

15   selecting Oracle products for customer presentations and demonstrations, they do not do any work

16   directly related to policy or business operations.[44]

17

18

19   [36] See, e.g., Paulino Depo. at 90:1-20.

20   [37] Cross Depo. at 134:7-11; Filice Depo. at 136:3-6; Seabloom Depo. at 136:6-9; Driver Depo. at 191:24-192:2; Gruesu Depo. at 105:16-20; Doolan Depo. at 76:7-23.

21   [38] Cross Depo. at 135:1-3; Franjione Depo. at 154:17-19; Filice Depo. at 136:9-17; Driver Depo. at 191:8-10.

22   [39] Cross Depo. at 134:12-22; Paulino Depo. at 43:10-22; Fitzpatrick Depo. at 196:6-9.

23   [40] Cross Depo. at 135:7-15; Franjione Depo. at 154:23-155:8, 155:17-19; Filice Depo. at 137:16-138:24; DeLaine Depo Vol. II at 203:11-16; Driver Depo. at 192:21-194:3; Fitzpatrick Depo. at 194:22-25; Gruesu Depo. at 106:11-20; Doolan Depo. at 97:22-98:10.

24   [41] Cross Depo. at 135:16-19; Franjione Depo. at 155:9-12; Filice Depo. at 139:2-7.

25   [42] Cross Depo. at 135:20-137:8; Franjione Depo. at 155:20-156:4; Filice Depo. at 139:8-140:7; DeLaine Depo. Vol. II at 204:15-24; Driver Depo. at 193:5-10; Gruesu Depo. at 106:21-107:9.

26   [43] See id.

27   [44] Cross Depo. at 164:12-21; see also Paulino Depo. at 90:1-20; see also Jain Depo. at 90:16-23.  Moreover, even in these non-exempt areas, Sales Consultants often work under constant supervision, and have limited discretion in how they go about preparing for, assembling, and presenting the demonstrations and presentations described above. See, e.g., Jain Depo. at 253:23-254:10, 256:16-23, 257:5-258:1, 259:1-8, 261:4-262:22, 263:16-264:7, 265:1-9, 269:25-270:9.

28

### e)  The Computer Occupation Professional Exemption

Employees who are highly skilled in computer systems analyses or programming, and who actually perform use these skills as a primary part of their jobs, can be exempt from overtime.  29 C.F.R. §541.400; Cal. Labor Code §515.5; IWC Wage Order 4-2001 at 1(A)(3)(h).  Oracle's managers have confirmed that, across the board, Sales Consultants are not hired to be computer programmers or software engineers.[45]  In fact, the job does not even require a background in computer programming or software development.[46]  Regardless of whether any particular Sales Consultant might have some programming skills, Sales Consultants as a class uniformly do not design the Oracle products or applications with which they work.[47]  Instead, they use their familiarity with software applications, such as PowerPoint, to assemble presentations and demonstrations of how the already-existing Oracle products might function or interact with the customer's business.[48]  Oracle has a separate organization that develops and designs the software programs it sells to its customers.[49]

### 3.  Oracle Uniformly Reclassified Its Sales Consultants As a Group Using the Same Rationale and Procedure for All Sales Consultants, but Uniformly Refused to Provide Them Any Back Pay for Their Overtime Labor Prior to the Reclassification.

By September 2006, Oracle had converted all of its U.S. Sales Consultants to non-exempt status.[50]  According to Oracle documents, the reclassification pertained to "a group of tasks

---

[45] Cross Depo. at 143:14-20, 144:7-145:3; Franjione Depo. at 168:13-169:4; Driver Depo. at 203:23-204:3; Gruesu Depo. at 48:20-49:2; *see also* Jain Depo. at 156:17-22; *see also* Kakani Depo. at 149:6-150:13, 153:16-22.

[46] Brin Depo. at 35:17-36:11.

[47] Cross Depo. at 144:7-145:3; Filice Depo. at 154:18-155:12; Seabloom Depo. at 78:14-25, 19:3-7; 110:4-8; Paulino Depo. at 44:6-9; DeLaine Depo. Vol. I at 45:17-23; DeLaine Depo. Vol. II at 210:6-214:8; Driver Depo. at 201:5-16; Fitzpatrick Depo. at 199:15-200:1; Doolan Depo. at 82:20-85:25, 152:8-154:4; Vakulskas Depo. at 230:6-16; Kakani Depo. at 147:9-19.  A demonstration or presentation that one Sales Consultant assembled can be demonstrated or presented by another Sales Consultant. Jain Depo. at 159:10-19.  Indeed, demonstrations and presentations can involve as little customization as simply adding the relevant information for a given customer into a template demonstration or presentation.  Brin Depo. at 142:18-143:16, 162:16-163:4.

[48] Franjione Depo. at 53:10-14, 70:7-18; Fitzpatrick Depo. at 129:21-130:24; Gruesu Depo. at 47:24-48:19; Jain Depo. at 152:2-13 (explaining that Sales Consultants "assemble different existing components of software and then show how they worked together"); Kakani Depo. at 131:10-15 (explaining that Sales Consultants regularly reused their old demonstrations).

[49] DeLaine Depo. Vol. I at 49:5-10.

[50] Cross Depo. at 69:20-24; Franjione Depo. at 87:8-13, 96:2-6; Filice Depo. at 75:6-8; Paulino Depo. at 31:12-31:1; DeLaine Depo. Vol. II at 107:4-9; Fitzpatrick Depo. at 40:6-20, 42:18-20, 64:18-65:3; Gruesu Depo. at 74:14-20; Doolan Depo. at 39:10-40:25; Vakulskas Depo. at 172:17-173:12.  Sales Consultants working in the Oracle Direct

1  clustered into certain jobs/positions."[51]  In deposition, Oracle's managers confirmed that this

2  reclassification was *not* done on an individual or employee-by-employee basis; instead, the

3  reclassification affected all Sales Consultant employees in the same way, regardless of their

4  location or industry within Oracle.[52]

5      Oracle provided the same information and explanation to all Sales Consultants and

6  managers regarding the reclassification: the company had made a business decision, based on

7  industry trends and their revised interpretation of the law, to reclassify as exempt all sales

8  consultant employees.[53]  In reclassifying its Sales Consultants, Oracle did not attempt to interview

9  managers to ascertain what kinds of tasks their Sales Consultants carried out as part of their jobs.[54]

10  Oracle's managers were not aware of any attempts to interview individual Sales Consultants on

11  this subject, either.[55]  Nothing was individualized.

---

group were converted in October 2005, and Sales Consultants working for Oracle University were converted in January 2006. Liscinsky Depo. at 56:4-20.

[51] *See, e.g.*, ███████████████████████████ (Bates Stamped D000000377-D000000384), attached as Exhibit O to Brill Decl., at p.2.

[52] Cross Depo. at 70:19-71:4, 79:1-10; Franjione Depo. at 65:13-24; Seabloom Depo. at 40:8-41:11, 75:20-76:2, 123:12-125:9; Gruesu Depo. at 74:24-75:15; Doolan Depo. at 23:11-24:3; Liscinsky Depo. at 59:5-24, 92:19-93:6; Vakulskas Depo. at 177:2-25.

[53] Oracle held several informational conference calls directed at the various levels of Oracle employees. Cross Depo. at 84:1-4, 95:18-21; Franjione Depo. at 100:8-21; Filice Depo. at 84:8-23, 86:4-7; DeLaine Depo. Vol. II at 106:20-23, 148:19-149:18; Driver Depo. at 53:14-25, 55:13-21; Fitzpatrick Depo. at 67:15-16, 83:9-19; Doolan Depo. at 99:10-100:8. For the official written explanation, *see* ███████████ (Bates Stamped D000000340-D000000347), attached as Exhibit R to Brill Decl.; ███████████ (Bates Stamped D000000348-D000000356), attached as Exhibit S to Brill Decl; ███████████ (Bates Stamped D000000359-D000000367), attached as Exhibit T to Brill Decl.; and ███████████ (Bates Stamped D000000377-D000000384), attached as Exhibit O to Brill Decl. Oracle's manager deponents testified that the same information and explanation was provided at the conference calls as well. Cross Depo. at 96:10-13; Franjione Depo. at 91:6-24; Filice Depo. at 77:2-10; Seabloom Depo. at 39:14-40:12; Paulino Depo. at 59:7-11; DeLaine Depo. Vol. II at 107:23-108:10, 123:24-124:9, 150:19, 150:25-151:7; Driver Depo. at 41:16-23; Fitzpatrick Depo. at 43:14-20, 100:2-11, 101:5-15, 102:18-103:1; Doolan Depo. at 101:1-22; Liscinsky Depo. at 58:15-59:4, 74:25-76:4, 91:7-25, 97:3-8; Vakulskas Depo. at 187:11-25, 192:5-21. *See also* Email from Michelle Rouse, dated October 17, 2006 (Bates Stamped D000000707), attached as Exhibit U to Brill Decl.

[54] Cross Depo. at 75:2-5; Franjione Depo. at 93:25-94:19; Filice Depo. at 77:20-78:2; Driver Depo. at 58:3-11; Gruesu Depo. at 79:1-18; Vakulskas Depo. at 194:2-14.

[55] Cross Depo. at 78:1-5; Filice Depo. at 79:14-17; Paulino Depo. at 59:12-21; Driver Depo. at 58:13-22; Fitzpatrick Depo. at 53:21-24.

---

SCHNEIDER
& WALLACE

Oracle's Sales Consultants continued to engage in the same job duties and tasks both before and after the reclassification.[56] The job requirements for a prospective Sales Consultant remained the same.[57] The only difference is that Oracle now recognizes that its Sales Consultants are non-exempt and entitled to overtime compensation: Oracle now pays them on an hourly basis and allows for overtime pay.[58]

### 4.  It Is Common for Oracle's Sales Consultants to Work Overtime Hours; Before the Reclassification, None Received Overtime Compensation.

Both before and after the reclassification, Sales Consultants routinely have worked more than eight hours in a day and forty in a week.[59] Plaintiff Jain testified that, during his tenure as a Sales Consultant, he "worked all the time," averaging between seventy-five and 100 hours per week, six or seven days a week.[60] It was also very common for him to receive business phone calls while on vacation.[61] Plaintiff Brin's situation was much the same – he worked long hours, sometimes as many as sixteen in a day.[62] He consistently worked in excess of eight hours in a day and forty hours in a week, and witnessed his fellow Sales Consultants doing the same.[63] Likewise, Plaintiff Kakani regularly worked ten-and-a-half or eleven hours per day.[64]

---

[56] Cross Depo. at 71:5-11; Franjione Depo. at 87:14-16; Filice Depo. at 76:5-8; Seabloom Depo. at 45:2-13; Paulino Depo. at 36:23-36:4; Driver Depo. at 31:21-32:1, 96:21-97:8, 158:1-3; Fitzpatrick Depo. at 40:21-14:4; Gnuesu Depo. at 75:17-24; Doolan Depo. at 101:23-102:1; Liscinsky Depo. at 57:24-58:5; Vakulskas Depo. at 192:22-193:6.

[57] Cross Depo. at 71:5-11; Seabloom Depo. at 46:1-7.

[58] Seabloom Depo. at 23:7-25:9, 28:15-25; DeLaine Depo. Vol. I at 41:1-11; Driver Depo. at 34:22-35:10, 36:23-28:7; Fitzpatrick Depo. at 41:15-24.

[59] Cross Depo. at 88:18-21; Franjione Depo. at 135:25-137:10; Filice Depo. at 118:2-6; Seabloom Depo. at 103:19-104:8, 104:23-105:8, 107:8-17; Paulino Depo. at 51:20-52:4, 54:23-55:8, 56:9-13, 101:1-11; DeLaine Depo. Vol. II at 214:9-216:1; Driver Depo at 156:24-157:20, 158:5-10; Fitzpatrick Depo. at 80:23-81:1, 203:22-204:15; Doolan Depo. at 102:2-14; Vakulskas Depo. at 206:6-208:23; Email from Peter Filice, dated August 18, 2006 (Bates Stamped D000000572), attached as Exhibit V to Brill Decl.; Email from John Margozewitz (Bates Stamped D000000734), attached as Exhibit W to Brill Decl.; Email from Christine Liscinsky, dated March 13, 2007 (Bates Stamped D000000876), attached as Exhibit X to Brill Decl.; Emails between Michelle Rouse, John Margozewitz, and Christine Liscinsky (Bates Stamped D000001098-D000001099), attached as Exhibit Y to Brill Decl.; Email from Christine Liscinsky, dated March 13, 2007 (Bates Stamped D000001103-D000001104), attached as Exhibit Z to Brill Decl.; Time Records from Unidentified Sales Consultant Employees (Bates Stamped D000001181-D0000082), attached as Exhibit AA to Brill Decl.

[60] Jain Depo. at 46:8-19, 48:24-49:22, 274:2-278:7.

[61] Id. at 274:2-278:7.

[62] Brin Depo. at 24:12-19, 26:11-19, 79:19-24, 110:23-111:3, 213:17-23.

[63] Brin Depo. at 252:23-253:8, 259:14-260:15.

[64] Kakani Depo. at 221:7-222:1.

---

SCHNEIDER
& WALLACE

1       All three Plaintiffs worked with other Sales Consultants, and have stated that they observed

2   their own hours to be similar to those of other Sales Consultants.[65] Further, Oracle's managers

3   agreed that overtime hours were common and expected for Sales Consultants.[66] However, none of

4   the Sales Consultants were paid overtime for any of the hours that they worked in excess of eight

5   in a day or forty in a week, until after the reclassification.[67]

6   **IV.   ARGUMENT**

7       **A. THE PROPOSED CLASS DEFINITIONS**

8       Plaintiffs, with this Motion, seek certification of two classes.  First, Plaintiffs request

9   certification of a California class consisting of "all individuals who worked as sales consultants for

10   Oracle in California for more than eight hours in one or more days or more than 40 hours in one or

11   more weeks at any time from four years prior to the filing of this case until Oracle's uniform

12   reclassification of this position to nonexempt and overtime eligible."  This definition would apply

13   to Plaintiffs' claims arising under the California Labor Code and the Unfair Competition Law

14   ("UCL"), because the UCL claims are predicated on the alleged violations of the California Labor

15   Code.  *See* Complaint at ¶92.  Second, Plaintiffs also seek certification of a nationwide class

16   consisting of "all individuals who worked as sales consultants for Oracle in the United States for

17   more than 40 hours in one or more weeks at any time from four years prior to the filing of this case

18   until Oracle's uniform reclassification of this position as nonexempt and overtime eligible.  This

19   definition applies to Plaintiffs' claims arising under the Unfair Competition Law ("UCL"), where

20   the UCL claims are predicated on the alleged violations of the federal Fair Labor Standards Act.

21   *See* Complaint at ¶92.[68]

22

---

23   [65] Kakani Depo. at 60:24-61:13, 242:10-23

24   [66] *See* FN 59.

25   [67] Kakani Decl. at ¶¶ 14-15; Brin Decl. at ¶ 7; Jain Decl. at ¶ 14.

    [68] While these definitions differ from those initially proposed in Plaintiffs' Complaint. this Court retains the discretion

26   to modify a class definition or class certification order.  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147. 160

27   (1982).  "This flexibility enhances the usefulness of the class-action device."  *Id.  See also Jordan v. Commonwealth Financial Systems, Inc.*, 237 F.R.D. 132, 136, n. 3 (E.D.Pa. 2006) ("amendment of a class definition at this stage in the litigation is procedurally appropriate. as the Court retains jurisdiction to modify the class until there is a decision on

28   the merits."); *Fisher v. Ciba Specialty Chemicals Corp.*, 238 F.R.D. 273, 300 (S.D. Ala. 2006) ("There is support in the case law for the notion that district courts have discretion to limit or modify proposed class definitions, and that a class

1   Plaintiffs have proposed this second, national class because the UCL applies to both

2   California residents and residents of other states so long as the conduct in question (here, the

3   creation and implementation of the pay policies at issue) occurs in California. *See Norwest*

4   *Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 224-225 (1999) (holding that "state

5   statutory remedies" and in particular the UCL, "may be invoked by out-of-state parties when they

6   are harmed by wrongful conduct occurring in California.") *Id.* at 224-225.

7   In *Norwest Mortgage*, the Court of Appeal permitted the plaintiffs to proceed with a class

8   action on behalf of "non-California residents for whom Norwest Mortgage's conduct…occurred in

9   California." *Id.* at 222. In doing so, the Court of Appeal relied on *Diamond Multimedia Systems,*

10  *Inc. v. Superior Court*, 19 Cal.4th 1036 (1999), in which the California Supreme Court held that

11  California has a legitimate interest in "extending state-created remedies to out-of-state parties

12  harmed by wrongful conduct occurring in California." *Diamond*, 19 Cal.4th at 1063-1064. Here,

13  Oracle is a California corporation, with both its headquarters and decision-makers in California. In

14  turn, Plaintiffs allege that Oracle's acts and practices of misclassifying its sales consultants as

15  exempt and failing to pay them overtime owed prior to the reclassification constituted "wrongful

16  conduct occurring in California." Because California has an interest in preserving a business

17  climate that guarantees the payment of all wages, the Court has jurisdiction over and authority to

18  apply the UCL to class members who worked for Oracle outside California.

19  **B.   CLASS CERTIFICATION DOES NOT INVOLVE A DETERMINATION OF
    THE MERITS OF PLAINTIFFS' CLAIMS, ALTHOUGH IT IS INFORMED BY**
20  **THE UNDERLYING PUBLIC POLICY IN FAVOR OF BROAD
    ENFORCEMENT OF THE OVERTIME LAWS**

21  The decision whether to certify a class is committed to the district court's discretion. *See*

22  *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1304 (9th Cir. 1990); *Anderson v.*

23  *City of Albuquerque*, 690 F.2d 796, 799 (10th Cir. 1982). "In ruling on a motion to certify, the

24  court accepts as true the allegations made in support of certification, and does not consider the

25

26

27  definition requires ongoing refinement and give-and-take."); *Turner v. Murphy Oil USA, Inc.*, 234 F.R.D. 597, 611
    (E.D.La.2006) ("district courts enjoy discretion to limit or modify class definitions to provide the necessary
28  precision").

1   merits of the case." *Freedman v. Louisiana-Pacific Corp.*, 922 F. Supp. 377, 398 (D.Or. 1996);

2   *see also Guenther v. Pacific Telecom, Inc.*, 123 F.R.D. 333, 335 (D.Or.1988). Thus, while "it may

3   be necessary for the court to probe behind the pleadings before coming to rest on the certification

4   question," *General Tel. Co. of Southwest*, 457 U.S. at 160, "[i]n determining the propriety of a

5   class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or

6   will prevail on the merits, but rather whether the requirements of Rule 23 are met. *Eisen v.*

7   *Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) (quoting *Miller v. Mackey International*, 452 F.2d

8   424, 427 (5th Cir. 1971); *see also Moore v. Hughes Helicopters, Inc.*, 708 F.2d 475, 480 (9th Cir.

9   1983) (citing *Eisen,* 417 U.S. at 177-78). "In exercising its discretion, the district court should

10  construe Rule 23 liberally and resolve all doubts in favor of class certification." *Schreiber v.*

11  *NCAA*, 167 F.R.D. 169, 173 (D.Kan. 1996).

12          Both FLSA and the California Labor Code provide individual employees with broad

13  enforcement powers; the pursuit of rights under these statutes by individual employees is central to

14  the statutes' enforcement scheme. *See Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S.

15  728, 740 and 740, n. 16 (1981) ("The statutory enforcement scheme grants individual employees

16  broad access to the courts." Furthermore, "[t]o encourage employees to enforce their FLSA rights

17  in court, and thus to further the public policies underlying the FLSA, [citation], Congress has

18  permitted individual employees to sue for back wages and liquidated damages and to receive

19  reasonable attorney's fees and costs."); *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319,

20  340 (2004) (California has "'a clear public policy…that is specifically directed at the enforcement

21  of California's minimum wage and overtime laws for the benefit of workers.' [Citation.]   As

22  defendant's own authority reminds us, California's overtime laws are remedial and are to be

23  construed so as to promote employee protection.") (quoting *Earley v. Superior Court*, 79

24  Cal.App.4th 1420 (2000)) (alterations in original); *Industrial Welfare Com. v. Superior Court*, 27

25  Cal.3d 690, 702 (1980) (In California, "in light of the remedial nature of the legislative enactments

26  authorizing the regulation of wages, hours and working conditions for the protection and benefit of

27  employees, the statutory provisions are to be liberally construed with an eye to promoting such

28  protection.").

## C.  THIS PROPOSED CLASSES ARE NUMEROUS AND JOINDER OF ALL PARTIES IS IMPRACTICABLE

Under FRCP 23(a)(1), Plaintiffs must show that the proposed class is "so numerous that joinder of all members is impracticable."  The data produced by Defendant in response to Plaintiffs' discovery requests indicate that the California subclass includes approximately 1,200 people nationwide.  The numbers shown in the data have been confirmed by Oracle's corporate designee in deposition.  *See* Liscinsky Depo. at 54:9-16 (Oracle Senior Human Resources Manager estimates that there are over a thousand sales consultants currently employed at Oracle.).  This is more than enough to make joinder of all members impracticable, and more than enough to satisfy the "numerosity" requirement.  *See, e.g., Farley v. Sullivan*, 793 F.Supp. 1267 (D.Vt. 1992) (certifying a class of 50 people); *Jenson v. Eveleth Taconite Co.*, 139 F.R.D. 657 (D.Minn. 1991) (class of 65); *Leyva v. Buley*, 125 F.R.D. 512 (E.D.Wash. 1989) (class of 50); *Committee of Blind Vendors of District of Columbia v. District of Columbia*, 695 F.Supp. 1234 (D.D.C. 1988), reversed on other grounds by 28 F.3d 130 (D.C. Cir. 1994) (class of 63); *Polich v. Burlington Northern, Inc.*, 116 F.R.D. 258 (D.Mont. 1987) (class of 60); *see also* Alba Conte and Herbert Newberg, *Newberg on Class Actions* ("Newberg"), 2002 ed., §3:5, p. 248 (40 or more class members generally satisfies numerosity).

## D.  THIS CASE RAISES NUMEROUS COMMON QUESTIONS OF LAW AND FACT

FRCP 23(a)(2) requires that "there are questions of law or fact common to the class."  All issues do not need to be common to all class members.  *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001).  In fact, there need only be a single issue of law or fact common to the class to satisfy the commonality requirement.  *Savino v. Computer Credit, Inc.*, 173 F.R.D. 346, 352 (E.D.N.Y. 1997); *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 61 (3d Cir. 1994).  Here, as shown in detail in Section III, *supra*, the documents produced by Oracle and testimony of Oracle's managers and Vice Presidents in deposition, as well as the Plaintiffs' own declarations and deposition testimony, show that sales consultants at Oracle performed similar job duties throughout the United States.  Oracle itself has described the sales consultant job as "███████████████████ ████████████████████" and has treated all levels of sales consultants as the same when

SCHNEIDER
& WALLACE

1  making its uniform exemption decisions. *See* ███████████████████████████████

2  ████████ (Bates Stamped D000000377-D000000384); *see also* Deposition Testimony and

3  Documents cited in Section III, *supra*. Oracle provides sales consultants as a class with the same

4  information about their position and role with the company, provides them with the same or

5  substantially similar templates for carrying out their basic job duties, and subjects them to the same

6  pay policies across the country. *See* Section III, *supra*. Because the class members are similarly

7  situated, common questions of law and fact apply to them as a class. "Class relief is 'peculiarly

8  appropriate' when the 'issues involved are common to the class as a whole' and they 'turn on

9  questions of law applicable in the same manner to each member of the class.'" *General Telephone*

10  *Co. of Southwest*, 457 U.S. at 155.

11  **E. PLAINTIFFS' CLAIMS ARE TYPICAL OF THOSE OF THE CLASS**

12  FRCP 23(a)(3) provides that a class action may be maintained if "the claims or defenses of

13  the representative parties are typical of the claims or defenses of the class." "The test of typicality

14  'is whether other members have the same or similar injury, whether the action is based on conduct

15  which is not unique to the named plaintiffs, and whether other class members have been injured by

16  the same conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting

17  *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D.Cal. 1985)). Oracle concedes that Plaintiffs who seek

18  to represent the subclass here were employed by Oracle in the job of Sales Consultant employee.

19  Oracle also concedes that it paid all its sales consultants in the same fashion. Thus, Plaintiffs

20  suffered similar injury as the other sales consultants as a result of Oracle's uniform conduct;

21  namely, they have not been paid overtime compensation for the overtime hours that Oracle admits

22  they worked. The policy was not unique to the named Plaintiffs and the named Plaintiffs rely on

23  the same laws to recoup their unpaid overtime as are applicable to the class generally. There is,

24  undoubtedly, a collective nature to the challenged conduct, and Oracle cannot realistically dispute

25  this. *See, e.g., General Telephone*, 457 U.S. at 156-157.

26

27

28

SCHNEIDER
& WALLACE

## F.  PLAINTIFFS AND PLAINTIFFS' COUNSEL ARE ADEQUATE REPRESENTATIVES OF THE CLASS

FRCP 24(a)(4) requires that the class alleged be adequately represented both by the class representative plaintiffs and the prospective class counsel.  The adequacy of the representative plaintiffs requires (1) an absence of conflict between the claims of the representative plaintiffs and the absent class members, and (2) the assurance that the representative plaintiffs will vigorously prosecute the case.  *General Telephone*, 457 U.S. at 157, n. 13.  The conflict prong focuses on the possibility of collusion between the class representatives and class counsel or the defendant to produce a result that does not benefit the class.  *See Eisen v. Carlisle and Jacquelin*, 391 F.2d 555, 562 (2d Cir. 1968).

There is no question that Plaintiffs are adequate here.  Plaintiffs are dedicated to vigorously prosecuting this case on behalf of the class members.  *See* Kakani Decl. at ¶19; Brin at ¶24; Jain Decl. at ¶17.  They have worked with counsel to present the claims, have searched for and produced documents in response to Oracle's discovery requests, have appeared for deposition, and are committed to continuing with this litigation for the benefit of the absent class members.  *See* Kakani Decl. at ¶19; Brin Decl. at ¶24; Jain Decl. at ¶17; Brin Depo. at 254:17-22; Jain Depo. at 23:2-9; 31:21-24.  They have no conflicts with the absent class members and not colluding with Oracle to settle out their claims on an individual basis.

Furthermore, Schneider & Wallace is a firm steeped in class action experience, including overtime class actions in federal and state court.  Declaration of Todd Schneider in Support of Plaintiff's Motion for Class Certification at ¶8.  A substantial portion of the firm's class action cases are wage and hour cases in California and federal court.  *Id.*  Schneider & Wallace is regarded as one of the leading private plaintiff's firms in employment and civil rights class actions, and Schneider & Wallace has acted or is acting as class counsel in numerous cases.  *Id.* at ¶9.

## G.  CLASS CERTIFICATION IS APPROPRIATE UNDER FRCP 23(B)(3) BECAUSE COMMON QUESTIONS OF LAW AND FACT PREDOMINATE AND THE CLASS MECHANISM IS SUPERIOR TO THE ALTERNATIVES OF PIECEMEAL LITIGATION OR UNDERENFORCEMENT OF THE OVERTIME LAWS

FRCP 23(b)(3) states:

1
2
3
4
5
6

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition...the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

7
8
9
10
11
12
13
14
15

As detailed in Section III above, common questions predominate over any individual issues given that all sales consultants have similar job duties and are paid the same way. "[Rule 23(b)(3)] states that a damages class may only be certified where the question of law or fact common to the members of the class predominate over any questions affecting only individual members. [Rule 23(a)(2)], on the other hand, simply requires that there be common issues of law and fact." *Gunter v. Ridgewood Engery Corp.*, 164 F.R.D. 391, 395 (D.N.J. 1996). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

16
17
18
19
20
21
22

   As detailed in Section III above, each class member's claim will turn upon a series of common questions relating to whether the common role and set of job responsibilities defines exempt or nonexempt work under applicable law. Furthermore, Oracle employs numerous templates and standardized procedures, from the demonstration prototypes and scripts used by the sales consultants, to the performance review instruments and pay policies used by their managers. Given the standardized procedures and similar set of job responsibilities, common questions of law and fact will predominate over any individual issues in this case.

23
24
25
26
27

   The only arguable variation of significance between class members would be the number of overtime hours they worked during the class period. But this is a damages issue, and the "mere fact that damages awards will ultimately require individual fact determinations is insufficient by itself to preclude class certification." *See McCarthy v. Kleindienst*, 741 F.2d 1406, 1415 (D.C. Cir. 1984).

28

1    Furthermore, because the sales consultants throughout Oracle have similar job duties and

2    were paid the same way, an adjudication of the rights of them all to overtime compensation would

3    be superior—for both the class, Oracle, and the court system—than another other method.

4    Oracle's data indicates that there are approximately 1,200 class members, and Oracle's corporate

5    designee testified that Oracle currently employs over 1,000 sales consultants. *See* Liscinsky Depo.

6    at 54:9-16. Requiring each one to file his or her own claim would be unrealistic, burden the court

7    system, risk inconsistent judgments and defeat the goals of efficiency and economy that the class

8    action device was designed to promote. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809

9    (1985). On the other hand, if class members are not allowed to have their claims adjudicated

10   through the class action device, many may not pursue them at all, and thus would be denied back

11   wages for which they worked and to which they are entitled, contrary to the strong public policy

12   behind the state and federal overtime laws. *See, e.g., Barrentine*, 450 U.S. at 740; *Sav-on*, 34

13   Cal.4th at 340; *Industrial Welfare Com. v. Superior Court*, 27 Cal.3d at 702.

14       "A class action is the superior method for managing litigation if no realistic alternative

15   exists." *Valentino*, 97 F.3d at 1234-1235. No realistic alternative exists that would permit full

16   effective enforcement of the overtime laws and the efficient management of common claims. For

17   this reason as well, class treatment of Plaintiffs' claims is the superior method for adjudicating the

18   claims of the class.

19       Finally, Plaintiffs will also shortly be making a Motion under the Fair Labor Standards Act

20   ("FLSA"), 29 U.S.C. §216(b), for certification of this case as a collective action for the purposes of

21   Plaintiff's FLSA claims. This will not causes difficulties in the management of the proposed Rule

22   23 classes. Indeed, the courts have found that FRCP 23 class certification is appropriate even

23   when a FLSA collective action is also alleged. *See Frank v. Gold'n Plump Poultry, Inc.*, 2005 WL

24   2240336 (D.Minn. 2005) ("courts routinely certify FLSA opt-in classes and Rule 23 opt-out

25   classes in the same action."); *Chavez v. IBP, Inc.*, 2002 WL 31662302, at *4 (E.D. Wash. 2002)

26   (superiority found because the Court saw no difficulties in the management of state law claims

27   "not already attendant in the FLSA class"); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D.

28   81, 89 (S.D.N.Y. 2001) (finding superiority despite the presence of an FLSA collective action,

stating that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" and "the difficulties likely to be encountered in the management of the class portion of this action are not likely to be different or greater than in the management of the collective portion of this action.").

### H. ALTERNATIVELY, CLASS CERTIFICATION IS APPROPRIATE UNDER FRCP 23(B)(2) BECAUSE ORACLE HAS ACTED ON GROUNDS GENERALLY APPLICABLE TO THE CLASS, MAKING EQUITABLE RELIEF (IN THE FORM OF BACK PAY) APPROPRIATE

FRCP 23(b)(2) states: "An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and…the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."  Because Oracle, as shown above, paid all of its sales consultants in the same manner, and refused to pay them overtime compensation for overtime hours worked, the class members are entitled to equitable relief—in the form of back pay for the overtime hours they worked before Oracle's decision to reclassify—to restore their rightful wages to them.  Under California's UCL, the payment of back wages properly may be viewed as restitution. *Cortez v. Purolator Air Filtration Products Co.*, 23 Cal.4th 163, 168 (2000) ("Section 17203 expressly authorizes orders necessary to restore money or property to any person in interest from whom the money or property has been obtained through an unfair business practice.").  More generally, "[o]nce earned, those unpaid wages become property to which the employees were entitled." *Id.*  As a result, Plaintiffs' claims for back wages, under any of the statutes alleged in Plaintiffs' complaint, are claims for restitution of property as well as damages, making class certification under FRCP 23(b)(2) appropriate here.

## V.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that this Court certify the two classes described in Plaintiff's Motion, appoint Plaintiffs as representatives of both classes, and appoint Schneider & Wallace as class counsel for both classes.

1    Respectfully Submitted,

2    Date: May 3, 2007                                    SCHNEIDER & WALLACE

3

4                                                         _____

5                                                         Hank Willson
                                                          Counsel for Plaintiffs and the putative Class
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28