IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MADHAV KAKANI, GENNADY BRIN, and RANJIV JAIN, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ORACLE CORPORATION,<br><br>Defendant.<br>_____ / | No. C 06-06493 WHA<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |

## INTRODUCTION

In this action alleging violations of California labor laws and the federal Fair Labor Standards Act, plaintiffs and defendant move for preliminary approval of a stipulated settlement agreement. After several attempts, parties have reached a settlement that is sufficiently fair and reasonable for absent class members that it should receive at least preliminary approval. Accordingly, the joint motion for preliminary approval of the proposed settlement is **GRANTED**, reserving on final approval later.

## STATEMENT

This wage-and-hour action, filed on October 17, 2006, alleged an FLSA opt-in collective action and California state-law claims on behalf of a class of current and former California workers. Plaintiffs Madhav Kakani, Ranjiv Jain, and Gennady Brin, three former employees of defendant Oracle Corporation, sued for unpaid overtime and meal and rest periods due to alleged misclassification of "sales consultants" as exempt employees. Although no class

has been certified in this action, plaintiffs filed their motion for class certification on May 3, 2007.

While that motion was pending, parties filed their first joint motion for preliminary approval of settlement on May 30, 2007. A hearing on the motion was held on June 19, 2007. By that time, the action had expanded to include a nationwide class of about ten job classifications. The settlement would have extinguished all wage-and-hour claim rights of putative class members regardless of whether they had filed a claim or even received notice of the suit. Most puzzling was that parties admitted that they disagreed over the scope of the release of claims under the settlement — defendants contended that it would bar all future state-law claims even outside of California, while plaintiffs contended that it would only bar California and FLSA claims. The settlement also was on a "claims-made" basis. Oracle would make available a pool of nine million dollars from which all claims would be paid. Any residue would revert to Oracle. Plaintiffs' counsel asked for $2.25 million, or 25% of the total amount available, in attorney's fees to be awarded even if the total of claims made was nowhere near that amount. Finally, notice to class members was inadequate under the settlement, and the period given to putative class members to opt out or file claims was far too short. An order denying preliminary approval issued on June 19, 2007.

A first amended settlement agreement was filed on June 29, 2007, and a further hearing was held on July 5, 2007. Some of the Court's concerns had been addressed, but others remained. Parties agreed to submit a second amended settlement agreement, which was received on July 16, 2007. This is the operative agreement.

**ANALYSIS**

In response to the concerns identified by the prior order, plaintiffs and defendant have made a number of changes. By and large, they have remedied the problems previously identified. Parties' changes are detailed below.

    **1.**    **FINAL AGREEMENT ON THE SCOPE OF RELEASE.**

The prior order was concerned that parties had not actually reached an agreement, particularly as to the breadth of the claims to be released. Oracle argued that the settlement

released overtime claims under 150 laws and regulations in 35 states. Plaintiffs did not agree, and contended that only California state-law claims were released. Approval of such a settlement could have led to uncertain outcomes if overtime claims were litigated in other states.

Now, plaintiffs and defendant expressly agree that only California overtime claims and non-California FLSA claims (but only for those class members who opt in) will be released by this agreement (Second Amd. Joint Stip. of Settlement, ¶¶ 2(s), 2(t), 14). Since parties agree as to the scope of the release, they have now reached a meaningful agreement.

### 2. FAIRNESS TO ABSENT CLASS MEMBERS.

The prior order was concerned that all claims of absent class members would be extinguished by the settlement regardless of whether they had received notice or not.

#### A. Scope of Claims Released.

First, the settlement as originally drafted would cut off all of Oracle's liability for overtime claims nationwide, while the original complaint asserted only California overtime claims. Oracle would only have to pay those who submitted claim forms; everyone else would be out of luck. The release in the current settlement is much narrower. For those California class members who do not opt out, their state-law claims will be released. For those outside of California with FLSA claims, claims will only be released for those who affirmatively opt in. All other putative class members will retain their rights.

The prior order was also concerned with the purported release of FLSA claims for absent class members under the prior agreement. The FLSA prohibits traditional class actions and authorizes only *opt-in* collective actions. 29 U.S.C. 216(b). Under the current agreement, FLSA claims are extinguished only for those members who affirmatively opt in to the settlement (*id*. at ¶ 2(l)).

As to the state-law claims, there was a serious question as to whether non-California workers could be forced to submit to a California court's jurisdiction and be bound by an order extinguishing their rights. The revised agreement releases no non-California state-law claims. Non-California class members can only be bound if they affirmatively opt in to the FLSA collective action class.

3

### B. Notice to Class Members.

The original proposal did not have sufficient measures give notice to class members. It allowed only 35 days from the date of mailing of the notice to file objections and opt-out notices, and 45 days to submit claims. The schedule applied to class members who received no notice at all or received late notices because of delivery problems. The mechanisms for finding class members' correct addresses were also not sufficient.

Since California overtime claims will be released (except for any opt-outs and non-delivered notices), it is still important that adequate notice be provided. This proposed settlement goes to greater measures to find correct addresses. Before the class notices are sent, the claims administrator will: (1) receive the last-known addresses, phone numbers, and social security numbers of settlement class members; (2) run that list through the United States Postal Service's National Change of Address database; (3) perform address searches using public and proprietary electronic resources that collect data from sources such as utility records, property tax records, motor vehicle records (where permitted), and credit bureaus; and (4) call last-known phone numbers to contact class members to obtain their current addresses (*id*. at ¶ 20(c)). Class members still employed by Oracle will receive workplace notice via email and conventional mail at their work addresses (*id*. at ¶¶ 20(d), (e)).

The time for filing opt-out notices and claims has been extended as well. Under the amended agreement, class members have 65 days from the date of mailing of the class notice to file opt-out notices and objections, and 75 days to submit claims (*id*. at ¶ 21). The amended agreement does not extend time for notices returned undeliverable, but it does address the problem. Former employees in the California classes will not be bound if they timely opt out *or* if they do not submit a claim form *and* their final notice is returned undeliverable (*id*. at ¶ 20(h)). Current California Oracle employees will be bound if they are given workplace notice. Non-California class members will not be bound unless they affirmatively opt in to the settlement (so by definition this group will receive notice). A small number of California class members may still slip through the cracks, but this notice system does a much better job of ensuring notice than the prior proposal and the Court finds that it will be adequate to satisfy due

4

process. To ensure efficacy of these notice procedures, the claims administrator and class counsel will be required to submit a list of class members identified by those who opt in, those who opt out, and those whose notice was returned undeliverable after the time for submitting claims and opt-out notices has passed.

### 3. DISPARITY BETWEEN CALIFORNIA AND NON-CALIFORNIA EMPLOYEES.

Under the original agreement, California claimants would receive at least twice as much as non-California claimants. No cogent justification for the disparity was given. The amended agreement adjusts the settlement to narrow this disparity. The members of the California overtime class and the non-California subclass will receive similar settlement shares per week worked. California employees will still get slightly more because California law provides for daily overtime compensation while the FLSA does not (*id*. at ¶ 31).

### 4. STEEP DISCOUNT IN SETTLEMENT.

The prior order was concerned that under the original agreement, class members would forfeit about 87.7% of their maximum claims — the maximum pay out under the settlement is nine million dollars, while the maximum total recovery is about $52.7 million. Plaintiffs' counsel was asked to submit a declaration under seal explaining his rationale in accepting such a discounted settlement. The declaration sufficiently explains the risks involved in this action, the effect of delay on costs and recovery, and other issues factoring into the outcome. Counsel has explained his reasons for accepting the low settlement, at least sufficiently to put the proposal out for comment.

### 5. ADEQUACY OF REPRESENTATION.

The prior order identified two concerns with adequacy of class representation: (1) the named plaintiffs could not represent all state-law claims; and (2) the named plaintiffs could not represent all subclasses. The revised agreement addresses the first problem because no state claims outside of California are released, so there is no longer a need for plaintiffs to represent those classes.

The second problem has been solved by creating three classes instead of four, defined by claims instead of time periods (*id*. at ¶ 11). The new classes are as follows: (1) the California

1 overtime class comprised of all employees who worked at Oracle in California between October
2 17, 2002, and the time their job codes were made eligible for overtime who were denied
3 overtime and waiting time penalties; (2) the California penalties class comprised of all
4 employees who worked at Oracle in California between October 17, 2002, and the date of
5 preliminary approval of this settlement who were denied meals and rest periods; and (3) the
6 FLSA collective action class comprised of all employees who were employed by Oracle
7 nationwide outside of California between October 17, 2003, and the dates Oracle made those
8 individuals eligible for overtime. The three named plaintiffs are adequate representatives for all
9 of these three classes.

**6.   ATTORNEY'S FEES.**

The original agreement asked the Court's dispensation for an attorney's fees award of 25% of the total funds available to be paid out for settlement, or $2.25 million, regardless of the amount of claims made. Human nature dictates that despite counsel's best efforts, not all class members will submit claims. The total amount paid out for settlement could wind up being much less than the funds available while class counsel would still receive $2.25 million.

As revised, the amended agreement now states that the award of attorney's fees will be based on the amount of claims paid out, *i.e.*, attorney's fees will be tied to the amount the class receives (*id*. at ¶ 30(a)). It is still premature for the Court to approve any particular fee structure. Plaintiffs must file a motion for attorney's fees after the total claims are determined. Fees will be determined at that time upon consideration of other pertinent factors.

**7.   INCENTIVE PAYMENTS.**

Under the prior agreement, named plaintiffs were to receive "incentive payments" of $15,000 each for their "time and effort." The prior order sharply disapproved of the incentive payments on this record.

Parties have eliminated the incentive payments, in name if not in kind. The revised agreement, however, now provides as follows (*id*. at ¶ 28):

> Within 20 days of the Effective Date, Defendant will pay to the California Labor Workforce Development Agency the sum of Fifteen Thousand Dollars ($15,000) in full resolution of any monies allegedly owed to the State of California under the Private

6

> Attorneys General Act of 2004, California Labor Code Sections 2698–2699 with respect to California law claims that were asserted or could have been asserted in the Complaint.

The relevant section of the Private Attorneys General Act of 2004 states:

> Except as provided in subdivision (j), civil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes; and 25 percent to the aggrieved employees.

Cal. Lab. Code § 2699(i). Here, Oracle is required to pay $15,000 to the Labor Workforce Development Agency, where 25% could end up paid to named plaintiffs. This could result in payments of $1250 to each named plaintiff (25% of $5,000 to each named plaintiff). The amended settlement agreement does not say whether any part of this payment will ultimately go to the named plaintiffs. The notice should make very clear that the named plaintiffs stand to reap this extra payment over and above what the ordinary class members will receive.

### 8. INCOMPREHENSIBILITY OF THE PROPOSED NOTICE.

The prior order found that the first proposed notice would be nearly incomprehensible to the layperson. It touched on a tangle of subclasses, glossed over the jurisdictional issues in the state-law claims, failed to define key terms, and was generally written in legalese. The amended notice is much clearer. The relevant terms have been defined, and the simplification of the proposed classes eliminates some of the problems in the notice. These changes are sufficient to make the notice capable of actually alerting class members that they have a claim.

As described above, parties must revise the notice to inform class members that named plaintiffs will be eligible to receive payments above and beyond what absent class members receive pursuant to the California Private Attorneys General Act. Also, the notice should state that the amounts paid out under it are about 15% of the maximum recovery available if the case went to trial. Class members should also be told that the Court invites comment on the adequacy of the settlement.

7

**CONCLUSION**

For all of the above-stated reasons, plaintiffs' and defendant's motion for preliminary approval of the proposed settlement agreement is **GRANTED**, subject to the following conditions. *First*, the notice to class members must include a statement that named plaintiffs will be eligible to receive payments of up to 25% of the $15,000 paid to the California Labor Workforce Development Agency under the California Private Attorneys General Act and that these amounts will be over and above what the absent class members will receive. *Second*, after the deadlines to submit claims and opt-out notices have passed, class counsel and the claims administrator are ordered to submit a list of all class members by name, divided into categories of those who opted in, those who opted out, and those whose notices were returned undeliverable.

At this time, the Court reserves the issue of final approval of the settlement agreement. In no way should the notice suggest that the Court has given approval to the settlement; instead the notice should state that the Court invites class members to comment on the adequacy of the settlement and it should state that the settlement represents about 15% of the maximum that might be recovered if the case went to trial. Counsel must submit a copy of the notice including the above-mentioned amendments no later than **AUGUST 13, 2007**.

This order hereby adopts parties' agreed-upon schedule, with the following amendment. Since the amount of attorney's fees is uncertain until the total amount of claims are known, the motion for attorney's fees should be filed at the same time as the motion for final approval of settlement. Pursuant to the proposed schedule, parties must file a motion for final approval of settlement and a motion for attorney's fees no later than **DECEMBER 3, 2007**, with the motions to be heard on **DECEMBER 20, 2007, AT 8:00 A.M.**

**IT IS SO ORDERED.**

Dated: August 2, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE