IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MADHAV KAKANI, GENNADY BRIN
and RANJIV JAIN, on behalf of themselves
and all others similarly situated,

    Plaintiffs,

  v.

ORACLE CORPORATION,

    Defendant.
                                    /

No. C 06-06493 WHA

**ORDER RE ATTORNEY'S FEES ON CLASS ACTION SETTLEMENT**

**INTRODUCTION**

In this action alleging violations of California labor laws and the federal Fair Labor Standards Act, plaintiffs move for approval of award of attorney's fees and costs as set forth in the second amended settlement agreement. The excessive amount of attorney's fees requested, however, cannot be justified. Accordingly, the motion for attorney's fees and costs is approved in the lower amount of $664,000 for fees and $75,000 for costs.

**STATEMENT**

This wage-and-hour action, filed on October 17, 2006, alleged a FLSA opt-in collective action and California state-law claims on behalf of a class of current and former California workers. Plaintiffs Madhav Kakani, Ranjiv Jain, and Gennady Brin, three former employees of defendant Oracle Corporation, sued for unpaid overtime and meal and rest periods due to alleged misclassification of "sales consultants" as exempt employees. Plaintiffs filed their motion for class certification on May 3, 2007.

While that motion was pending, parties filed their first joint motion for preliminary approval of settlement on May 30. A hearing on the motion was held on June 19. By that time, the proposal settlement had expanded to include a nationwide class of about ten job classifications (although the complaint remained unchanged and narrower). Nationwide, the proposal would have extinguished all wage-and-hour claim rights of putative class members regardless of whether they had filed a claim or even received notice of the suit. Surprisingly, there was no meeting of the minds as to the scope of the release — defendants contended that it would bar all future state-law claims throughout America, while plaintiffs contended that it would only bar California and FLSA claims. The settlement also was on a "claims-made" basis. Oracle would make available a pool of nine million dollars from which all claims would be paid. Any residue would revert to Oracle. Regardless of the claims paid, however, plaintiffs' counsel would have received $2.25 million in fees (25% of the total amount theoretically "available"). Notice to class members would have been inadequate under the first settlement, and the period given to putative class members to learn about the case and to opt out or file claims was far too short. The settlement allowed only 35 days from the date of mailing of notice to file objections and opt-out notices, and 45 days to submit claims. The proposed notice was nearly incomprehensible, with its tangle of subclasses, inattention to the serious jurisdictional issues in the state-law claims, and general legalese rhetoric. Even class members who received no notice at all or received late notices because of delivery problems would lose everything and recover nothing.

Under the original agreement, California claimants would have received at least twice as much as non-California claimants. No cogent reason was given to justify the disparity in treatment between Californian claimants and Non-Californian claimants. In addition, class members would forfeit about 87.7% of their maximum claims, settling for nine million dollars, while the maximum recovery was about $52.7 million.

In short, the proposal was collusive. Oracle would have wiped out its national wage-and-hour liabilities off its books, counsel would have received a bonanza, and a vast number of

absent class members would have received little or nothing in exchange for forfeiture of their actions. The proposal was rejected at the threshold by an order dated June 19.

An amended settlement agreement was submitted on June 29, and a further hearing was held on July 5. Some of the Court's concerns had been addressed, but others remained. The parties agreed to submit a further amended settlement agreement, which was received on July 16. An order dated August 2 found that the parties had remedied many of the problems outlined above and had reached a settlement that was sufficiently fair and reasonable to warrant preliminary approval. Preliminary approval of the three subclasses was granted. For settlement purposes the following three subclasses were certified: (1) the California overtime class comprised of all employees who worked at Oracle in California between October 17, 2002, and the time their job codes were made eligible for overtime who were denied overtime and waiting time penalties; (2) the California penalties class comprised of all employees who worked at Oracle in California between October 17, 2002, and the date of preliminary approval of this settlement who were denied meals and rest periods; and (3) the FLSA collective action class comprised of all employees who were employed by Oracle nationwide outside of California between October 17, 2003, and the dates Oracle made those individuals eligible for overtime.

The August 2 order also informed the parties that since the attorney's fees would be uncertain until the total amount of claims were known, that any motion for attorney's fees should be filed with the motion for final approval for settlement. Plaintiffs' counsel submitted its motion for attorney's fees along with the motion for final approval accordingly. The instant order resolves that motion.

**ANALYSIS**

**1.  LEGAL STANDARD.**

The district court has discretion in common-fund cases to award attorney's fees in the amount of a percentage of the common-fund or using the lodestar method. No matter which route is chosen by the district court, the award "must be supported by findings that take into account all of the circumstances of the case." The lodestar method gives a measure of counsel's time and investment in the case and may provide "a check of the reasonableness of [a]

percentage award." The risks involved in the case and the length of the litigation are proper issues to consider when determining a multiplier under the lodestar method. Although the range of multipliers used by district courts in common-fund cases varies widely, an overwhelming majority of district courts have used between 1.0-4.0 as the multiplier.[1] *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047–1051 (9th Cir. 2002).[2]

In the Ninth Circuit, a district court should consider the following factors that are not subsumed in the initial lodestar calculation when considering a proper multiplier:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The factors that are presumably subsumed in the initial lodestar calculation include: (a) the novelty and complexity of the issues; (b) the quality of representation; (c) the special skill of counsel; and (d) the results obtained. Although a district court need not mechanically go through each of the factors, it should consider those factors not subsumed in the initial lodestar calculation when determining a multiplier. *Morales v. City of San Rafael*, 96 F.3d 359, n.8, n.9, and n.10 (9th Cir. 1996). A brief explanation of how the district court arrived at its lodestar calculation should be given, but an "elaborately reasoned, calculated, or worded order" is unnecessary. *Cunningham v. County of Los Angeles*, 96 F.3d 359, 484 (9th Cir. 1988). This order will review those factors for which a proper record has been submitted by counsel.

**2. COUNSEL'S FEES AND COSTS.**

Plaintiffs' counsel request an award of attorney's fees in the amount of $1,858,497.03, or 25% of the value of the claims actually made, plus costs in the amount of $75,000. Counsel

---

[1] In *Vizcaino,* the Ninth Circuit found that of 24 common-fund cases, 83% ranged between 1.0-4.0, while 54% ranged between 1.5-3.0.

[2] All internal citations are omitted in this order.

4

also point out that, due to their inadvertence, the methodology used to calculate the 25% of claims made was incorrectly portrayed in an example formula set forth in the second amended agreement (Br. n.1). If the formula in the agreement were actually used, plaintiffs' counsel would receive $1,531,529.02, or 20.6% of the value of the claims actually made. Counsel requests the Court overlook this mistake and award the full 25% of the claims actually made. There are additional inconsistencies. In their motion for attorney's fees, plaintiffs state:

> Plaintiffs' counsel's lodestar currently is $399,745.50, and Plaintiffs' counsel incurred costs in the amount of $85,002.78. Plaintiffs' counsel estimates that the lodestar will exceed $500,000 by the time of the final approval hearing, due to the need to work with the settlement administrator, to be available to communicate with class members, and to prepare for and attend the hearings on this Motion and on final approval (Br. 8).

The declaration of counsel Todd Schneider, however, states:

> Exhibit 1 shows that Plaintiff's counsel current lodestar is $282,295.50. Exhibit 2 is a true and correct accounting of Schneider & Wallace's costs in this action. The costs incurred by our firm in bringing this case totaled $80,150.07. . . .Plaintiffs' counsel estimated that the lodestar will exceed $332,000 by the time of the final approval hearing, due to the need to work with the settlement administrator, be available to communicate with class members, and prepare for and appear at the hearing on this Motion and final approval (Schneider Decl. ¶ 6).

Both Exhibits support Schneider's declaration. Given the pattern of alleged inadvertence in the paperwork in this case, dating back to the collusive agreement that supposedly did not mean what it said, this order finds the discrepancy between the numbers quoted in counsel's brief and Schneider's declaration disturbing. No explanation is given for the difference, and the fees and costs in both the declaration and brief seem to cover the same dates. This order will hold counsel to the lodestar sworn to in Attorney Schneider's declaration.

    Plaintiffs' counsel claim that the attorney's fees requested are commensurate with the amount of work and risk associated with representing plaintiffs in this action. They also contend that the lodestar method supports an award of $1,858,497.03, or 25% of the value of the total claims made. This order finds otherwise.

5

The estimated lodestar of $332,000, given in Schneider's declaration, would yield a multiplier of 5.6 for an award of $1,858,497.03. This number is unjustifiably high given the circumstances surrounding this case and the risk taken on by counsel in representing the class. We must remember that the award sought by plaintiffs' counsel is ultimately money that belongs to the class members. Any unwarranted amount awarded to plaintiffs' counsel comes directly out of their pockets. Counsel's request is simply unfair to the individuals whose injury led to the present settlement.

For the following reasons, this order finds that a multiplier of 2.0 is commensurate with the circumstances surrounding this case. Accordingly, using a multiplier of 2.0 with the $332,000 lodestar given in Attorney Schneider's declaration yields an amount of $664,000.

### A. Awards In Similar Cases.

Plaintiffs' counsel request for a multiplier of 5.6 is entirely out of line with analogous multipliers awarded in other common-fund cases. In *Vizcaino,* the Ninth Circuit found that in only three of the twenty-four cases analyzed (i.e. 12.5% of the cases), was a multiplier beyond 4.0 even awarded. Conversely, a multiplier of 2.0 falls within the range of 1.0 to 4.0 typically awarded in common-fund cases. *See Vizcaino*, 290 F.3d. at 1051. Additionally, for the reasons set forth below, the present action does not qualify as on one of the extraordinary situations where a multiplier greater than 4.0 should be used.

Plaintiffs' counsel contends that had the instant action been brought by an individual plaintiff, counsel would likely have been entitled to one third of any recovery. The instant action, though, *is not* an individual action, it is a *class action*. Therefore, there are monumental economies of scale that result in increased efficiencies in counsel's expense of time and resources. This is an important advantage of a class action suit.

### B. Risk Associated With Case.

In common-fund cases, a lodestar may be enhanced to reflect the risk of non-payment. Attorneys should be properly incentivized to take on worthwhile cases where the probability of payment is low or uncertain. The riskiness of a case has a direct correlation on its "undesirability," one of the factors highlighted by the Ninth Circuit when determining a proper

1 multiplier. The facts in this case, however, do not justify the multiplier requested by plaintiffs'
2 counsel. Wage and hour cases are populace in our courts and are far from being undesirable.
3 Many practitioners would have taken on the present case. Unlike other actions, such as
4 consumer fraud or securities fraud, the present action centers around a relatively predicable set
5 of parameters involving employee classifications.

The claims in this suit may readily be evaluated by determining whether the job specifications of the class members meet the requirements set forth in the relevant statute (i.e. FLSA or the California Labor Code). Plaintiffs' counsel was most likely well informed of any potential difficulties and obstacles that laid in the path to obtaining a favorable and anticipated settlement. Such circumstances are much less risky than the situation where counsel is in the dark regarding the likelihood of ultimately prevailing.

### C. Time and Labor Required.

Generally, a lawyer's investment of time and labor in a suit is more limited in the case of early settlement. *See Vizcaino*, 290 F.3d at 1050. The primary work conducted by plaintiffs' counsel includes: (a) twelve depositions of Oracle employees; (b) review of 20,000 pages of documents; and (c) review of pay and time records for the class (Br. 1). Although plaintiff's counsel maintains that significant time and effort was exhausted conducting this discovery, the first preliminary hearing motion for the original settlement agreement was filed before any order was even issued regarding class certification. No motion to dismiss or motion for summary judgment was made. In addition, plaintiffs' counsel contend that they "obtained this settlement efficiently, affording redress to the class member swiftly," (Br. 9) nonetheless, had it not been for the parties' unacceptable settlement terms outlined above, this case may have concluded long before its current course. Thus, counsel could have spent significantly less time than the 762.9 hours (billed out at a rate of $450.00 per hour) detailed in Attorney Schneider's declaration on this action, thereby saving the class members a considerable amount of money.

### D. Results Obtained.

Plaintiffs' counsel also argue that a high multiplier is appropriate because they were "able to settle this case for a substantial amount under the circumstances" and because their firm

7

is "one of the leading plaintiffs' wage and hour firms in California consisting of "experienced class action attorneys" (Br. 9). These arguments, however, are expressly considered subsumed in the initial lodestar calculation. It is inappropriate to adjust the lodestar for "'quality of representation'" in the absence of "specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.' " *Cunningham*, 879 F.2d at 488. Counsel may not seek a higher multiplier on the premise that superior advocacy skills led to a more favorable settlement without first showing how their representation was exceptional, and why such exceptional representation was not factored into the initial lodestar calculation. Absent such evidence, any increase in the multiplier is uncalled for.

## CONCLUSION

For all of the above-stated reasons, a multiplier of 2.0 is the most that should be allowed. The parties' motion for attorney's fees and costs is approved in the amount of $664,000 for fees and $75,000 for costs. Half of this amount shall be paid now. The other half shall be paid when counsel certify that all funds have been properly distributed and the file can be completely closed. The parties should submit a revised proposed order finally approving second amended settlement agreement accordingly.

**IT IS SO ORDERED.**

Dated: December 21, 2007.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE